Save these United States and this Honorable Court. Please be seated. Good morning. We'll proceed to hear argument in the first case on calendar for argument this morning which is 20-71914 Elvia Otilia Morales Belloso and we will hear first from Mr. Lucero. You may proceed. Good morning, Your Honors. May it please the Court, Richard Lucero appearing on behalf of the petitioner, Ms. Morales Belloso. Getting straight to the point, Your Honors, the Court made three inquiries of counsel on this case. The first inquiry was whether or not the petitioner failed to exhaust her administrative remedies by fully presenting to the Board the issue of whether or not the judge's order completely mischaracterized the ground on which the petitioner sought to qualify Dr. Green as an expert. With respect to the Court's question on that issue, admittedly that issue was not sufficiently raised with the Board of Immigrations. There was some talk about the due process issues with respect to how the judge handled the expert witness and how the judge did not qualify, how the judge should have qualified the witness as an expert. However, the specific issue of whether or not in the judge's order he mischaracterized the purpose of characterizing her as an expert, that was not raised. Okay, so the issue that it should have come, she should have been qualified, we should have had the further hearing that the judge had promised, but it wasn't on the fact that the judge had just completely gotten the whole thing backwards, because the issue at the hearing was she was admittedly qualified on one ground, and the question is she could be qualified on the other, and when he gave the ruling both orally and in writing, he did it entirely backwards, but that was never called to the attention of the BIA. That's 100% correct, Your Honor. It wasn't until the brief. So there was a failure to exhaust in the brief. It was, Judge, admittedly it was. There's no way I can make the argument that it was raised when it clearly wasn't. Okay. Okay, so obviously that begs the question, did counsel for the government waive the exhaust issue by not raising it, and I would assert that by not raising the issue in their brief that the counsel did not exhaust this remedy. They forfeited it, that issue, and in Santos Zacharias, the court specifically stated that 1252 D1 is subject to waiver and forfeiture, and they also cited to NutraCeutical stating that it was subject to waiver and forfeiture, and in this particular case, the waiver and forfeiture was knowing and intelligently. The issue with respect to the witness was clearly articulated in the brief. However, counsel failed to raise the exhaustion issue. You clearly raised it in your opening brief, the issue about getting it backwards, and then the red brief didn't say, well, you didn't tell the BIA that. Correct. Now, they did forfeiture on your forfeiture, and then they forfeited the objection to your forfeiture. Yeah, correct. Now, they did raise the exhausted issue with respect to another issue in the brief, but not to this one, so again, that's why I would argue that they knowingly and intelligently waived the exhaustion issue. Do you think they made a conscious decision that, you know, knowing and voluntarily going to let that go, or they just noticed that it had not been raised before the BIA? Maybe they just didn't want to address it because it's clearly, clearly the judge made an error in the decision. He got it all backwards like you stated, so maybe they just didn't want to address the issue, but I mean, the issue is as clear as they articulated in the brief to the government, so I'm not exactly sure why they failed to raise the issue when they did on another point. Then that gets us to the issue that the court expressly reserved in Santos-Zacarias, which is when you have this situation, the petitioner fails to exhaust, but the government fails to timely raise the claim processing rule of requiring exhaustion. Does the court have discretion, sui sponte, to nonetheless enforce the exhaustion rule? Correct, so it looks like the appeal court seemed to be under the impression that the court does have sui sponte authority to raise exhaustion issues, but what I found interesting in the sense... Who is under that? Well, I think that there was a, well, for example, the Tenth Circuit. But there's a Tenth Circuit. Yeah, yeah, yeah. But this isn't, I mean, I'm not bound by the Tenth Circuit. Yeah, yeah, I understand, it's not binding here. But is there any Ninth Circuit case that you were able to find that addresses this issue? There was not, Your Honor, but what I do find interesting... So it's an open question. So you tell us why you think it should be resolved in your favor. Yes, Your Honor. So in a footnote, in Santos-Zacarias, the court specifically stated that they rejected the government's contention that Congress precluded the court from considering any issues that had not been presented to the court. So I think this leaves the door open for the court to possibly review this issue on its own, even though, in spite of the exhaustive issue. So you're conceding that we have the discretion and asking us not to exercise it, or are you arguing we don't really have the discretion that the government should be held to its fortitude? Yeah, so in the case, I don't see any exception, once the government has forfeited that issue, that permits this court to sua sponte, address the exhaustive issue. I mean, like you said, the Tenth Circuit case ruled the opposite, but that's the Tenth Circuit. In the Ninth Circuit law, I don't see any exception, once the government forfeited that issue, that would allow this court to sua sponte, bring up that issue. But assuming that we, suppose we don't agree and we have discretion, do you think that under the exercise of discretion, we should give you a pass on this? I wouldn't say give a pass, but again, I would point back to the same language from the Santos case, where just because it wasn't raised, it doesn't preclude this court from addressing the issue. So I'm not necessarily saying that the court should be adjudicating issues that were never brought before the board, because that obviously wouldn't be good practice. But I think that there's a compelling interest that this court can address the issue, perhaps remand it to the board for further adjudication of that issue. You may proceed. Okay. Okay, so again, in sum, now that we got to that point, those are the three inquiries. So number one, no, it wasn't sufficiently raised. Number two, I do feel that the government knowingly and intelligently waived the issue by not bringing it up. And number three, I don't see any case law which says that this court can sua sponte, bring this up if the government waived the issue. And you think if we get to the merits of the issue of the IJ's mistake, you think it has to go back? It has to go back. It has to go, because there is no... The BIA said we don't have anything from the BIA about it or... Yeah, well, I mean, it would have to go back to the BIA first, I think, for them to address the issue, and then they would decide what they want to do with it. But if this court sees that there's a compelling interest, because clearly there was a mistake, the judge got it backwards, I think this court should be permitted to be able to send it back to the BIA to be able to address that issue. Okay. Do you want to save some time for... I do, Judge. I don't have any more argument. If the court would respectfully allow me a couple of minutes in case I want to go. Morning, Honors. Linda Doe for the respondent, the United States Attorney General. Turning to Petitioner's due process claim, Petitioner did not set forth any allegation of IJ mischaracterization in his appeal to the board. In fact, this is a stance opposite to that taken before the board. In his appeal to the board... He's conceded that. He's conceded that he raised before the board his request that Dr. Green should have been qualified. But he admits that he didn't raise as one of the grounds for that, that the IJ had made this error of getting everything backwards. Well, Your Honor, I would like to submit that Petitioner went so far as to perpetuate the error in his appeal to the board. He states that he had sought to present Dr. Green as an expert on Guatemalan indigenous women and violence, and then claimed that the immigration judge had failed to permit her or qualify her as an expert in that regard, and then claimed that it violated his due process, her due process rights, because Dr. Green would have clarified the issue of nexus in a particular social group. Again, this is the exact opposite of the argument raised before this court. Accordingly, Petitioner has not exhausted his administrative remedies with respect to that claim, and this is set forth at pages 16, 20, and 21 in the certified administrative record. But you didn't raise the exhaustion issue in your red brief, the failure to exhaust, because the blue brief clearly raises the issue about getting it backwards, and you didn't call out in the red brief, hey, what are you saying that for? You didn't tell the board that. To have two responses for this, Your Honors. First, it was not a knowing, a knowing waiver. If anything, it's most a forfeiture. At most, it's a forfeiture.  At the time of briefing, 1252d1 was a jurisdictional requirement at the time. As to not addressing this specific argument, I believe it's arguable that the board had addressed the merits of the claim, wherein the board properly acknowledged the reason for which Dr. Green was being proffered. And the board's decision acknowledges, although Dr. Green may be an expert on violence against Indigenous women, Petitioner is not Indigenous and did not show how the testimony would be relevant or bear on the outcome of the case. In light of the board's decision, it would render any error by the IJ irrelevant. And Petitioner does not allege that the board had erred in its concern. Is that clear? Because here's the problem, is that we don't know that the IJ correctly assessed the decision that he took under submission. Because what happened at the hearing is he actually, you know, had her put on the stand, had the voir dire done in order to assess whether her expertise extended from the one conceded area about Indigenous women to the conditions of women generally. And then he took that under submission. He basically said there will be another hearing if I qualify her. And then he does it all backwards and thinks that she's qualified on the subject that was at issue and that it's Indigenous. And so we don't really know that he properly exercised his discretion as to whether to qualify her on the subject. We just don't have a ruling that makes any sense that we can rely on. Well, that's why it's incumbent upon Petitioner's counsel to raise that before the BIA. BIA is in a best position to rectify any procedural errors that Petitioner is sending forth. Here, Petitioner did not raise that claim and did not afford the board the opportunity to consider or address the issue. So you're arguing, so even if we, you're arguing that even if we find that he procedurally defaulted and you procedurally defaulted by failing to note his procedural default that there are good reasons here to exercise sua sponte authority because this is an error that could have been fixed if it had been called out on the spot. Exactly, Your Honors. I believe in this court's decision, Tall v. Mukasey, held that procedural errors that are rectifiable by the board are not excluded from an exhaustion requirement. Additionally, this court has considered, in the context of a non-statutory prudential exhaustion requirement, considered whether waiving the lack of exhaustion would promote the deliberate avoidance of the administrative scheme. And that was set forth in Montes v. Thornburg and Lange v. Ashcroft. In those cases, the court considered that, you know, in doing so would promote judicial inefficiency, if you will, or an incorrect record where Petitioner could have raised these arguments to the board for them to consider it and correct it at the time but did not do so. In light of the foregoing, I request that this is a proper instance in which the court should and can exercise sua sponte authority to invoke the exhaustion requirement under 1252d1. Here, Petitioner set forth a diametrically opposite claim before the board, which is now setting forth before the court. So were you able to find any Ninth Circuit precedent that addresses the sua sponte issue one way or the other on a par with the Tenth Circuit case? No, Your Honors. I do believe that in Day v. McDonnell, the Supreme Court has cited a Ninth Circuit case in the context of a habeas. I believe it was Vang. But nothing in this? I mean, because the Supreme Court acknowledged the issue and then expressly reserved it. So they've left it open. And is it your view that it's also open in this court as well, such that we might need to decide that here? Correct, Your Honors. I believe that it is open. I believe that the court can sua sponte, invoke the lack of exhaustion, and decline to reach the issue. Alternatively, should the court deem that the board had exhausted it by, you know, alternatively by reaching the merits of the issue, then the Petitioner's argument of I.J. Arrow would be irrelevant. Do you have in mind a test that would apply for when the Court of Appeals should raise this sua sponte? Because it seems to me that this arguably should be treated like any affirmative defense. Well, as Your Honor noted, that the Supreme Court noted in Day v. McDonnell, it could be applied in instances where an affirmative defense or procedural error arose. In that case, it was the statute of limitations, where the state had not invoked the executive decision at the time, but the court could do so sua sponte. As you noted, the Seventh Circuit also found that 1252d1 was also possibly to be invoked sua sponte. And again, whereas here it is a procedural error that would be able to be corrected by the board, you know, judicial efficiency suggests that the court should invoke it in instances such as these. It should not be permitted to make an end round around the agency in order to, you know, raise these claims. And then, finally, Your Honors, you know, Petitioner hasn't shown that, you know, the record of this compels a contrary inclusion to the denial of cat protection, and Petitioner had further failed to exhaust the grounds for which the immigration judge had denied asylum and withholding. But suppose we conclude that we have to reach the merits of whether Dr. Green should have been qualified as an expert here. Does it have to go back because the IJ's ruling shows that his exercise of discretion was tainted by confusion? Well, Your Honors, again, this is not presented to the board, and Petitioner does not like— Suppose we're past all that. We've gotten a sua sponte exercise of discretion. We've declined to enforce the exhaustion requirement here. Assume that, and we're now getting to the merits of the issue of whether Dr. Green should have been qualified as an expert, and there should have been further hearing. What do we do then? Well, Your Honors, the first instance, you know, Petitioner did not allege any error in the board's in considering the proffer. As the board explained, there was no prejudice. Even if, you know, assuming there was an error, there was no prejudice. Petitioner did not show— How could he say that when the IJ promised that there would be a further hearing if Dr. Green was qualified as an expert? He said that. So we don't know what— He didn't then put the Petitioner to make a proffer as to what would happen. He said, You'll get the hearing, and then you'll develop whatever testimony you want from her, and then it'll just— We don't know. But I set forth in the record, the immigration judge didn't preclude the expert from testifying— or, sorry, the witness from testifying. The immigration stated specifically that even if not qualified as an expert, she could still be called to testify. It was Petitioner herself or Petitioner's counsel who said that they declined to have her own witness testify. It wasn't the immigration judge that had precluded her. In this, the record shows— I think it was 110, 111— that the immigration judge was more than willing to allow Petitioner's expert to testify. How does that work in an immigration hearing? I mean, if you're not— She's not a fact witness, and she's not an expert. She testified, but what values her testimony then? I'm not sure how much you would credit. Again, it would be, I guess, to background, and it's uncertain necessarily what that would be, but the immigration judge during the hearing noted that she did not have any personal knowledge of the witness, had not interviewed the witness— I mean, sorry, had not interviewed the Petitioner. And the witness's declaration was submitted into the evidence, and the entirety of her declaration was premised on violence against Indigenous women. So it was fair to the immigration judge to, you know, inquire, you know, how would this be relevant to Petitioner's claim? And as the board noted, you know, Petitioner did not indicate that her expert would have testified to the unable and unwilling grounds, which was the sole basis of which the IAJ had denied her asylum withholding claims. In her appeal to the board, Petitioner specifically stated that the expert would have testified as to nexus and particular social group, and which was wholly irrelevant in this instance where the immigration judge did not deny her claim based on that premise. Okay. All right. Thank you, counsel. All right. We'll hear rebuttal now. Just to sum up, Your Honors, the court asked government counsel if she could state to any court would have to sua sponta raise the issue of exhaustion, and she really stated that there was none. What the court asked her, what kind of test might there be for the court to do that? And that's a great question. I guess that's open, maybe a compelling interest. But what's your response? I mean, there's some force to the argument that if we get to the third question, and we decide that we have discretion, sua sponta, to choose whether or not to enforce the exhaustion rule here, her argument is that this is a really good case to enforce it, because this error could have been fixed. I know you weren't Petitioner's counsel at the IJ hearing, but if that counsel had stood up right away on the spot and said, Your Honor, I think you said that backwards, it could have been fixed on the spot and rather than six years later where we are today. And if it had been told to the BIA, hey, this was backwards, the BIA could have shipped it back quickly. So it seems like a case that maybe if we have discretion, it should be enforced here. What's your response to that? Yeah, I think this would be maybe even a compelling interest not to bring it up, because obviously there was a clear, clear, clear error at the immigration judge level. So I think that this would be an instance where the court might not want to bring up the exhaustion issue, because there is a compelling interest. That being the fact that there was a grave, grave error at the trial level. So government counsel seemed to proffer an efficiency test when I asked that question. You're referring to it as a compelling interest test. Yeah, sure. And that's just off the top of my head. I mean, I haven't had time to think that up, but that's what I would just offer. You're saying that the error is so obvious that no discretion should be exercised to overlook something that's bad. That's what I would say. And obviously as practitioners, we try to bring all the issues to the forefront at the very beginning, but we make errors. So if the court, I think like in Dave, sees a grave, grave error, I think this court should be permitted to be able to address it and even send the case back if need be. All right. Thank
judges: COLLINS, LEE, Fitzwater